*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0092P (6th Cir.)
File Name: 02a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: TROUTMAN
ENTERPRISES, INC.,
          *Debtor.*
_____

DONALD F. HARKER III,
Trustee,
       *Plaintiff-Appellant,*

     *v.*

RUFUS TROUTMAN, TERRY
TROUTMAN, and LESTER
TROUTMAN,
      *Defendants-Appellees.*

No. 00-4325

On Appeal from the Bankruptcy Appellate Panel
of the Sixth Circuit.
No. 92-01988—Thomas F. Waldron, Bankruptcy Judge.
Steven W. Rhodes, Chief Bankruptcy
Appellate Panel Judge.

Argued: February 1, 2002

Decided and Filed: March 15, 2002

Before:  MARTIN, Chief Circuit Judge; GILMAN, Circuit
Judge; EDMUNDS, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Ira Rubin, GOLDMAN, RUBIN & SHAPIRO, Dayton, Ohio, for Appellant. Tim J. Robinson, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Ira Rubin, GOLDMAN, RUBIN & SHAPIRO, Dayton, Ohio, for Appellant.  Tim J. Robinson, Bradley K. Johnston, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellees.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Chief Circuit Judge.  Plaintiff Donald F. Harker, Trustee of Troutman Enterprises, Inc., appeals the decision of the bankruptcy appellate panel awarding life insurance proceeds to the intervenors Rufus Troutman, Terry Troutman and Lester Troutman, shareholders of the reorganized Troutman Enterprises, Inc. Because we find that the Shareholders lacked standing to appeal the decision of the bankruptcy court, we vacate the decision of the bankruptcy appellate panel and affirm the judgment of the bankruptcy court.  We deny the motion of the reorganized Troutman Enterprises to intervene as untimely.

I.

On July 11, 1986, Troutman Enterprises, Inc. purchased a $500,000 life insurance policy on Larry Troutman, a shareholder and officer of Troutman Enterprises.  The policy named Troutman Enterprises as owner and beneficiary.

———————————

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

Troutman Enterprises filed for bankruptcy protection on April 23, 1992 and the bankruptcy court confirmed its amended joint plan of reorganization on September 1, 1993. Troutman Enterprises did not disclose the insurance policy in its initial disclosure schedules, the amended plan of reorganization, or at any time during Chapter 11 proceedings.

On October 30, 1995, the Internal Revenue Service moved to convert Troutman Enterprises's Chapter 11 case to a Chapter 7 case pursuant to 11 U.S.C. § 1112(b). None of Troutman Enterprises's creditors objected to this motion, and on January 4, 1996, the case was converted and Donald Harker was appointed Trustee of Troutman Enterprises. Shortly thereafter, the reorganized Troutman Enterprises, without notifying the Trustee, purported to transfer ownership of the policy. Troutman Enterprises remained the sole beneficiary of the policy.

Approximately three weeks after Larry Troutman's death in 1999, the reorganized Troutman Enterprises filed an amended schedule disclosing its interest in the life insurance policy. Following this disclosure, the Trustee instituted an adversary proceeding against Nationwide Life Insurance Company, the issuer of the policy, seeking turnover of the life insurance proceeds. After Nationwide interpleaded the proceeds and was dismissed from the case, the Shareholders moved to intervene as third-party defendants. In an agreed order, dated July 26, 1999, the Trustee consented to the Shareholders's intervention application.

The Shareholders asserted entitlement to the insurance proceeds and moved for dismissal of the Trustee's complaint for failure to state a claim, or in the alternative, for summary judgment. In response to the Shareholders's motion, the Trustee (1) contested the Shareholders's standing; (2) argued the insurance policy never vested in the reorganized Troutman Enterprises; and (3) asserted that judicial estoppel barred their claim to the insurance proceeds. The bankruptcy court granted the Trustee's complaint for turnover, reasoning that Troutman Enterprises's failure to disclose the insurance

policy during Chapter 11 proceedings estopped its Shareholders's claim to the insurance proceeds. *Harker v. Troutman (In re Troutman Enters., Inc.)*, 244 B.R. 761, 769 (Bankr. S.D. Ohio 2000).

Addressing the standing issue, the bankruptcy appellate panel concluded the Shareholders "have standing because as shareholders of the reorganized debtor they may have some interest in the proceeds of the Policy." *Harker v. Troutman (In re Troutman Enters., Inc.)*, 253 B.R. 1, 7 (6th Cir. B.A.P. 2000). Finding that the Trustee failed to demonstrate all of the requisite elements of judicial estoppel, the bankruptcy appellate panel reversed the bankruptcy court and awarded the policy proceeds to the Shareholders.

In a separate bankruptcy proceeding not currently before this Court, creditors of the reorganized Troutman Enterprises sought an involuntary Chapter 7 petition against the reorganized Troutman Enterprises. The bankruptcy court dismissed this petition, reasoning that the creditors could not assert any claims against the reorganized Troutman Enterprises, but could only pursue recovery in the pending Chapter 7 case. *In re Troutman Enters., Inc.*, 244 B.R.106, 111 (Bankr. S.D. Ohio 2000). Reversing the bankruptcy court, the bankruptcy panel ruled that the creditors could pursue claims against the reorganized Troutman Enterprises. *In re Troutman Enters.*, 253 B.R. 8, 13 (6th Cir. B.A.P. 2000).

In February of 2001, the reorganized Troutman Enterprises moved to intervene in this action, asserting that its interests might not be adequately protected by the Shareholders. Thereafter, John Paul Rieser was appointed as Trustee for the reorganized Troutman Enterprises and on November 1, 2001, moved to substitute for the reorganized Troutman Enterprises.

## II.

In reviewing bankruptcy decisions, we review the judgment of the bankruptcy court directly. *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66

In the case at hand, the reorganized Troutman Enterprises waited a year and a half to pursue intervention, and then only after the bankruptcy courts rendered two decisions. Its purported justification, a belief that until recently, its Shareholders adequately represented its interests, does not withstand scrutiny. The Trustee began contesting the Shareholders's standing in October of 1999, thereby notifying the reorganized Troutman Enterprises's of the possibility that its Shareholders might not be able to adequately protect its interests. Although this case contains some unusual circumstances, they do not excuse the reorganized Troutman Enterprises's untimely motion for intervention. Therefore, we deny the motion for intervention.

## IV.

Because we find that the Shareholders lacked standing to appeal the bankruptcy court's decision, we do not reach the substantive issues addressed by the bankruptcy courts below – the effect of post-confirmation conversion, the application of judicial estoppel to remedy debtor non-disclosure and, perhaps most importantly, who would be entitled to how much of the life insurance policy proceeds. We therefore vacate the decision of the bankruptcy appellate panel and affirm the judgment of the bankruptcy court.

*Dein Host, Inc.)*, 835 F.2d 402, 405-06 (1st Cir. 1987); *In re Central Ice Cream*, 62 B.R. 357, 359-60 (N.D. Ill. 1986); *Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.*), 145 B.R. 637, 641-42 (9th Cir. B.A.P. 1992). For example, the First Circuit ruled that a sole shareholder lacked standing to challenge an order concerning assumption of a lease because he asserted only corporate harm and lacked a personal or direct interest in the proceedings. *Dein Host, Inc.*, 835 F.2d at 405; *cf. New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 901 F.2d 1359, 1363 (6th Cir. 1990) (ruling that preferred stockholder satisfied bankruptcy standing requirements to challenge portion of order concerning interest payments on pre-petition debt).

In this case, the Shareholders cannot assert any personal or direct interest in the proceeds of the life insurance policy on Larry Troutman. The record indicates that Troutman Enterprises is both policy owner and beneficiary. Even if we were to recognize the purported transfer of policy ownership, the Shareholders would still lack a personal or direct interest in the policy. Without a direct interest in the life insurance policy, the Shareholders cannot invoke the exception to the shareholder standing rule. Therefore, we find that the Shareholders did not have standing to appeal the bankruptcy court's decision.

### III.

The final issue we must address is the reorganized Troutman Enterprises's motion for intervention. At a minimum, a motion for intervention must be timely. *Grutter*, 188 F.3d at 397. In evaluating timeliness of an intervention application, we examine (1) the stage of the proceedings; (2) the proffered purpose of intervention; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) potential prejudice to the parties attributable to the proposed intervenor's delay; and (5) the existence of unusual circumstances. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

F.3d 1436, 1440 (6th Cir. 1995). We review its factual findings for clear error and its legal conclusions *de novo*. *In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002).

### A.

Challenging the Shareholders's participation in this case, the Trustee first argues the Shareholders cannot satisfy intervention requirements. In order to intervene as of a right under Rule 24 of the Federal Rules of Civil Procedure, a party must show (1) their motion to intervene was timely; (2) a substantial, legal interest in the subject matter of the case; (3) their ability to protect that interest may be impaired without intervention; and (4) the parties before the court may not adequately represent their interest. *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999). While some courts have found that a shareholder's financial interest in a corporation's lawsuit falls short of the requisite substantial, legal interest required for intervention, we need not reach this question because the Trustee waived any objection to the Shareholders's intervention. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir. 1989) ("In a sense, every company's stockholders . . . have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them with the degree of 'interest' required for Rule 24(a) intervention."); *Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 183 (N.D. Tex. 1986) (denying intervention, in part, because "[s]hareholders' claimed injury in the [corporation's] lawsuit does not exceed the normal interest that a shareholder has in a lawsuit brought by a corporation in which he owns stock.").

Intervention is a procedural hurdle, rather than a jurisdictional requirement, and as such, can be waived. *See Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997); *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979). The Trustee not only failed to lodge a timely intervention objection, he affirmatively consented to the Shareholders's intervention application in a July 26, 1999

Agreed Order on Motion for Intervention.  Therefore, we conclude that the Trustee waived his objection.

### B.

The Trustee's waiver of his intervention objection does not end our inquiry.  *United States v. AVX Corp.*, 962 F.2d 108, 116 n.7 (1st Cir. 1992); *Boeing Co. v. Comm'r of Patents & Trademarks*, 853 F.2d 878, 881 (Fed. Cir. 1988).  As with any other party, an intervenor must have standing enabling the appellate court to review its claim.  *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (citing *Diamond v. Charles*, 476 U.S. 54, 68, 106 S.Ct. 1697, 90 L.E.2d 48 (1986)).  Standing is a jurisdictional requirement and we are under a continuing obligation to verify our jurisdiction over a particular case.  *CDI Info. Servs. v. Reno*, 278 F.3d 616, 618 (6th Cir. 2002).

Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith.  *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).  In order to have standing to appeal a bankruptcy court order, an appellant must have been "directly and adversely affected pecuniarily by the order."  *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996).  Derived from the now-repealed Bankruptcy Act of 1898, "[t]his principle, also known as the 'person aggrieved' doctrine, limits standing to persons with a financial stake in the bankruptcy court's order."  *Id.*  Thus, a party may only appeal a bankruptcy court order when it diminishes their property, increases their burdens or impairs their rights.  *Id.* (citing *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585 (7th Cir. 1994); *Gen. Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184, 187-88 (3d Cir. 1993); *In re El San Juan Hotel*, 809 F.3d 151, 154-55 (1st Cir. 1991)); *see also Marlow v. Rollins Cotton Co.*, 146 F.3d 420, 423 (6th Cir. 1998).

Under ordinary prudential standing limitations, litigants must normally assert their own rights, rather than those of third parties.  *Singleton v. Wulff*, 428 U.S. 106, 113, 96 S.Ct.

2868, 49 L.Ed.2d 826 (1976).  The Supreme Court has articulated two principal justifications behind the  third-party standing prohibition – (1) courts should not adjudicate third-party rights unnecessarily and (2) third parties will typically be the best proponents of their own rights.  *Id.* at 113-14.  These concerns apply with particular force in the bankruptcy context.  *In re PWS Holding Corp.*, 228 F.3d at 248; *Kane v. Johns-Mansville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988).  As the Second Circuit observed:

> Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present . . . . In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights.

*Johns-Mansville, Inc.*, 843 F.2d at 644 (citations omitted); *EFL Ltd. v. Miramar Res., Inc. (In re Tascosa Petroleum Corp.)*, 196 B.R. 856, 863 (D. Kan. 1996).

Associated with the prohibition on third-party standing is the so-called shareholder standing rule, the "longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Franchise Tax Bd. of Calif. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); *see also Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 602-03 (6th Cir. 1988).  A shareholder may invoke the exception to this rule if they can demonstrate a "direct, personal interest" in the cause of action.  *Franchise Tax Bd.*, 493 U.S. at 336.

In the bankruptcy context, courts have relied on the shareholder standing rule in holding that shareholders could not appeal a bankruptcy court decision where they asserted only a derivative interest.  *Pignato v. Dein Host, Inc. (In re*