[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11810
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-01494-MSS,
Bkcy No. 8:08-bk-18672-MGW

In Re: Ernie Haire Ford, Inc.,
d.b.a. Ernie Harie Megavolume Superstore,
d.b.a. BigDog Motorcycles of Tampa,
d.b.a. Quicklane Tire & Auto Center,
d.b.a. Ernie Haire Used Car Supercenter of Tampa,
d.b.a. Ernie Haire Used Car Auto Mall,
d.b.a. Indian Motorcycle of Tampa,

                                                            Debtor.
_____

BENJAMIN ATKINSON,

                                                  Plaintiff - Appellant,

versus

ERNIE HAIRE FORD, INC.,

                                                  Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 4, 2014)

Before WILSON, PRYOR and ROSENBAUM, Circuit Judges.

WILSON, Circuit Judge:

Appellant Benjamin Atkinson appeals from the district court's affirmance of the bankruptcy court's orders granting Appellee Ernie Haire Ford, Inc.'s (Debtor) motion to modify its Second Amended and Restated Chapter 11 Plan (Second Plan) and confirming the Debtor's Third Amended Plan of Reorganization (Third Plan). Because Atkinson's interest in avoiding liability is not an interest protected or regulated by the Bankruptcy Code, he has failed to satisfy our person aggrieved standard. Accordingly, we affirm.

I.

The Debtor, a licensed Ford dealer operating in Hillsborough County, Florida, filed for Chapter 11 bankruptcy on November 24, 2008. The Debtor's Second Plan was confirmed by the bankruptcy court on October 14, 2009. Among other things, the Second Plan empowered a liquidating agent, at its discretion, to sue third parties alleged to owe money to the bankruptcy estate. The Second Plan also provided that "[a]ll Litigation not already pending at the time of the Effective

2

Date shall be brought prior to the Litigation Bar Date or shall be conclusively deemed waived or abandoned."[1]  Additionally, the Second Plan allowed the bankruptcy court to "enjoin any Person from commencing, instituting, or pursuing a suit, action, or claim . . . that is barred pursuant to the Plan" upon the request of "any defendant."

Appellant Benjamin Atkinson is a former creditor[2] who was employed by the Debtor from 1999 through 2005.  On December 30, 2011, well after the passage of the Litigation Bar Date, the liquidating agent named Atkinson as a defendant in 16 adversary proceedings alleging claims of fraud and misappropriation related to Atkinson's employment.  Atkinson moved to enjoin the liquidating agent from proceeding with these claims on the grounds that they were filed after the Litigation Bar Date.  In response, the Debtor filed a motion to modify the Second Plan that sought to amend the definition of the Litigation Bar Date to allow the adversary proceedings against Atkinson to go forward.  The

---

[1] The "Litigation Bar Date" is defined by the Second Plan as "the date one hundred and twenty (120) days after the Effective Date established in the Plan as the last day by which Litigation may be initiated against or by the Debtor or any agent or professional acting on behalf of them, for any claim or cause of action relating to the Debtor and arising before the Effective Date, after which all such claims and causes of action are barred."

In its order approving the Second Plan, the bankruptcy court set the definition of "Effective Date" as "the date 10 (ten) calendar days following the date upon which this Confirmation Order is signed by this Court."  The order was signed October 14, 2009, making the Effective Date October 24, 2009.

[2] In 2006 a jury awarded Atkinson a judgment against the Debtor, but Atkinson was unable to recover because the Debtor filed for bankruptcy while an appeal was still pending. Atkinson originally filed a proof of claim with the bankruptcy court and spent a period of time serving on the Creditor's Committee that appointed the liquidating agent.  However, he withdrew his proof of claim on October 27, 2011 and resigned from the Committee in January 2012.

3

bankruptcy court heard the Debtor's motion during a hearing held on March 6, 2012 and announced its ruling three days later on March 9.

The bankruptcy court determined that a modification could occur based on its finding that the Second Plan had not been substantially consummated because the Debtor still controlled a number of assets—valued between two and three million dollars—that were required to be sold under the Second Plan. The Debtor subsequently filed its Third Plan, which modified the Litigation Bar Date to allow the adversary proceedings against Atkinson to go forward. The bankruptcy court confirmed the Third Plan at a hearing on June 5, 2012 and entered an order (Confirmation Order) on June 21, 2012.

On appeal, the district court affirmed the bankruptcy court's grant of the motion to modify and subsequent confirmation of the Third Plan. Atkinson now appeals to this court.

## II.

We review questions of law decided by the district court de novo. *Westwood Cmty. Two Ass'n. v. Barbee* (*In re Westwood Cmty. Two Ass'n.*), 293 F.3d 1332, 1334 (11th Cir. 2002).

## III.

Due to the nature of bankruptcy proceedings, which "often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the

full payment of their outstanding claims against the bankrupt," special rules have been developed to govern which parties may appeal a bankruptcy court order. *Id.* (internal quotation marks omitted). Under § 39(c) of the now-repealed Bankruptcy Act of 1898, only "a person aggrieved" could appeal from an order of the bankruptcy court. *Id.* at 1335 & n.2. Although the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, does not include a similar provision limiting who can appeal, courts continue to apply the person aggrieved standard because "Congress [did not] intend[] to alter the definition set forth in the prior law." *In re Westwood Cmty. Two Ass'n*, 293 F.3d at 1334; *see also Travelers Ins. Co v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585 (7th Cir. 1994); *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641–42 (2d Cir. 1988); *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987); *Fondiller v. Robertston (In re Fondiller)*, 707 F.2d 441, 442–43 (9th Cir. 1983). Like our sister circuits, we have adopted the person aggrieved doctrine as our standard for determining whether a party can appeal a bankruptcy court's order. *In re Westwood Cmty. Two Ass'n*, 293 F.3d at 1335.

The person aggrieved doctrine limits the right to appeal a bankruptcy court order to "those parties having a direct and substantial interest in the question being appealed." *Id.* at 1335 (internal quotation marks omitted). We have held that this

doctrine defines aggrieved persons as those individuals who are "directly, adversely, and pecuniarily affect[ed]" by a bankruptcy court's order. *Id.* at 1337–38  "An order will directly, adversely, and pecuniarily affect a person if that order diminishes their property, increases their burdens, or impairs their rights." *Id.* at 1338.[3]

A number of our sister circuits have held that bankruptcy court orders that merely allow adversary proceedings to move forward do not cause adversary defendants the type of direct harm necessary to satisfy the person aggrieved standard. *See Moran v. LTV Steel Co. (In re LTV Steel Co.)*, 560 F.3d 449, 453 (6th Cir. 2009) (holding "that the burden of defending a lawsuit, however onerous or unpleasant, is [not] the sort of direct and immediate harm that makes a party 'aggrieved.'"); *H.K. Porter Co.*, 45 F.3d at 743 ("Consistent with the view that appeal from bankruptcy proceedings is denied to marginal parties in bankruptcy proceedings who face potential harm incident to the bankruptcy court's order but are not directly affected, courts have recognized that an order which simply allows a lawsuit to go forward does not necessarily aggrieve the potential defendant . . . ." (citation and internal quotation marks omitted)); *In re El San Juan Hotel*, 809 F.2d

---

[3] Our case law describes the person aggrieved doctrine as "a prudential prerequisite to standing." *In re Westwood Cmty. Two Ass'n*, 293 F.3d at 1335 n.3.  However, the Supreme Court has since stated that "prudential standing is a misnomer" in another context. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, ___134 S. Ct. 1377, 1387 (2014) (internal quotation marks omitted).  *Lexmark* counsels that the person aggrieved standard does not speak to a court's subject-matter jurisdiction.  Rather, it tells us which parties may appeal from a bankruptcy court order.

at 155 (holding that an order authorizing a suit to move forward against an adversary defendant did not "diminish [his] property, increase his burdens, or detrimentally affect his rights").  We agree that a party is not aggrieved, for the purposes of appealing from a bankruptcy court order, when the only interest allegedly harmed by that order is the interest in avoiding liability from an adversary proceeding.  This is so because an order subjecting a party to litigation, or the risk thereof, causes only *indirect* harm to the asserted interest of avoiding liability.  Orders allowing litigation to go forward do not burden a party's ability to defend against liability; they simply require parties to exercise that ability.  Such an effect does not constitute the direct harm necessary to satisfy our person aggrieved standard.

Moreover, the Second, Sixth, and Seventh Circuits have recognized that a person is not "aggrieved" when the interests harmed by a court order are not interests the Bankruptcy Code seeks to protect or regulate.  *See In re LTV Steel Co.*, 560 F.3d at 454 (noting that the interest of an adversary defendant in avoiding liability is not protected by the Bankruptcy Code); *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273–74 (2d Cir. 1997) (finding that a party who was not allowed to bid on a debtor's assets at auction could appeal the order approving the transaction because attacks on the inherent fairness of a bankruptcy proceeding are "within the zone of interests

7

which the Bankruptcy Act seeks to protect and to regulate" (internal quotation marks omitted)); *In re Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974) ("[T]o establish standing as a "person aggrieved" under § 39(c) of the Bankruptcy Act, it is necessary for the plaintiff to show . . . that the interest which he seeks to protect . . . is an interest which the Bankruptcy Act seeks to protect or regulate."). We agree with this approach and hold that for a person to be aggrieved, the interest they seek to vindicate on appeal must be one that is protected or regulated by the Bankruptcy Code.

The person aggrieved standard was developed as an answer to the argument that the failure to limit who can appeal a bankruptcy court's order would cause "bankruptcy litigation [to] become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane*, 843 F.2d at 642. Since the purpose of adopting this heightened standard was to ensure that the goals of bankruptcy were not derailed by a flood of appeals, it only makes sense to exclude appeals from those parties who do not suffer a direct harm to interests the Bankruptcy Code seeks to protect or regulate—that is, appeals that do not further the goals of bankruptcy. Allowing appeals from parties who have suffered only an indirect harm or who hold interests outside the scope of the Bankruptcy Code would defeat the very purpose underlying our person aggrieved standard.

With these principles in mind, we turn to the question of whether Atkinson meets our person aggrieved standard. Atkinson suggests that he is a person aggrieved because the bankruptcy court's order deprived him of an affirmative right granted to him under the Second Plan—the right to enjoin any litigation initiated after passage of the Litigation Bar Date. Under the Second Plan, Atkinson could defend against liability in suits filed after the Litigation Bar Date by turning to the bankruptcy court for an injunction.

Atkinson relies on this right to differentiate himself from the normal adversary defendant. He argues that he has suffered a direct harm because the bankruptcy court's order does more than simply allow litigation to proceed against him. Instead, the order hampered Atkinson's ability to defend against liability by removing a defense that would have otherwise been available to him—the right to seek an injunction because a claim was initiated after passage of the Litigation Bar Date. This, he contends, is enough to make him a person aggrieved. *See In re LTV Steel, Co.*, 560 F.3d at 454 (noting that an order allowing litigation to proceed "did not impair appellants' ability to defend themselves" because all defenses were still available (internal quotation marks omitted)); *H.K. Porter Co.*, 45 F.3d at 743 (finding that an order did not directly harm an adversary party's interest in defending against liability because the order did not prevent him from asserting any claims or defenses); *In re El San Juan Hotel*, 809 F.2d at 155 (same).

9

Assuming arguendo that Atkinson has suffered a direct harm as a result of the amended Litigation Bar Date, he is still not a person aggrieved because his interest is not protected or regulated by the Bankruptcy Code.  As we noted before, Atkinson withdrew his proof of claim and resigned from the Creditor's Committee.  As such, he comes to us merely as an adversary defendant with an interest in avoiding liability; an interest that is antithetical to the goals of bankruptcy.  *See In re LTV Steel Co.*, 560 F.3d at 454 (stating that the "interest[] in avoiding liability to the estate . . . is diametrically opposed to the primary goal of the Bankruptcy Code in general, which is to minimize the injury to creditors" (citation and internal quotation marks omitted)).  Because Atkinson's sole interest is that of an adversary defendant in avoiding liability, he is not a person aggrieved for the purposes of appealing from an order of the bankruptcy court.[4]

Atkinson's reliance on the right to seek an injunction bestowed on him by the Second Plan only serves to highlight that he is not a person aggrieved.  Importantly, Atkinson's right originates in the Second Plan, not the Bankruptcy Code.  Even if we considered his interest in avoiding litigation by enjoining a lawsuit as different from his interest in avoiding liability, we would not deem Atkinson a person aggrieved because his interest is not protected by the

---

[4] Of course, we are not saying that an adversary defendant can never be a person aggrieved.  An adversary defendant may satisfy our standard if his appeal attempts to defend an interest that is protected by the Bankruptcy Code.  *See In re Colony Hill Assocs.*, 111 F.3d at 273–74 (allowing an unsuccessful auction bidder to challenge the bankruptcy court's approval of a transaction because the appeal protected the "inherent fairness of a bankruptcy proceeding").

Bankruptcy Code.  The purpose of the person aggrieved standard is to prevent bankruptcies from being needlessly prolonged by parties whose interests are not central to the process.  Treating Atkinson or other tangentially interested parties as persons aggrieved would completely undermine the rationale behind our standard and bring bankruptcy proceedings to a grinding halt. Accordingly, we affirm.

**AFFIRMED.**